## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-cv-23596-ALTMAN/Reid

**MUSTAPHA ASSI**,

     *Plaintiff*,

*v.*

**UNITED STATES DEPARTMENT
OF HOMELAND SECURITY**, *et al.*,

     *Defendants.*

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Mustapha Assi, a naturalized U.S. citizen, had "flown this nation's airways without incident" for "over forty years[.]" Amended Complaint [ECF No. 48] ¶ 5. But suddenly and "without notice or warning," Assi says that the nine Defendants—various federal agencies and their directors— "wrongfully flagged Mr. Assi for enhanced screening in or about November 2020[.]" *Id.* ¶¶ 5, 8. This decision, Assi argues, violated "the First, Fourth, and Fifth Amendments to the United States Constitution, and the Administrative Procedure Act[.]" *Id.* at 46. The Defendants have moved to dismiss Counts I–III of Assi's Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and Counts III–VII of the Amended Complaint for failure to state a claim under Rule 12(b)(6). *See* Motion to Dismiss ("MTD") [ECF No. 51] at 1.[1] After careful review, we **DENY** the MTD as to Count I and **GRANT** the MTD as to all other counts.

### THE FACTS

Assi was "born in Beirut, Lebanon," in 1955, but he immigrated to the United States in the

---

[1] The MTD is fully briefed. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Response") [ECF No. 52]; Reply Memorandum of Law in Support of Defendants' Motion to Dismiss ("Reply") [ECF No. 55].

1980s and became a U.S. citizen on February 28, 1991. Amended Complaint ¶¶ 61–62. Over the past four decades, Assi "worked as a licensed engineer for various firms" and then opened two of his own engineering firms. *Id.* ¶¶ 67–69. Assi's "career success has required him to travel regularly for work," and—for "approximately 30 years"—he had "no difficulty" traveling by air. *Id.* ¶¶ 73, 76. Assi "has never been arrested, never been accused of committing any crime, and indeed, never given any reason to suspect that he is involved in the funding of terrorism, terrorist activities of any kind, or posed any threat whatsoever to aviation safety." *Id.* ¶ 74. In fact, Assi has been "subjected to varying degrees of security screening on every instance of air travel, which never once identified any evidence that Mr. Assi posed a threat to aviation safety," and he was even "approved for TSA PreCheck status" on September 9, 2014. *Id.* ¶¶ 77–78.

This all ended on November 18, 2020, when Assi received a letter from the Transportation Security Administration ("TSA") revoking his TSA PreCheck status—a letter that "contained no detail or explanation as to the reason that Mr. Assi's status was suddenly revoked." *Id.* ¶ 81. Since then, Assi has been subjected to "unreasonable and intrusive enhanced screening" every time he wishes to travel by air. *Id.* ¶ 82.[2] This enhanced screening "adds approximately two hours to the amount of time Mr. Assi would normally take to travel," and any person traveling with Assi is "also subjected to the same heightened screening as Mr. Assi." *Id.* ¶¶ 86–87. Assi alleges that he's been subjected to extra screening because he was placed on the "Terrorist Screening Database" ("TSDB") for purely discriminatory

_____

[2] Some examples of this "enhanced screening" process include: "(i) being prevented from obtaining a boarding pass without appearing at a check-in counter; (ii) having to wait for check-in agents to call a supervisor in order to obtain approval for his check-in and waiting at least 30 minutes to obtain such approval (iii) having 'SSSS' marked on every single boarding pass; (iv) being subjected to additional and heightened screening of his person and his belongings both at security checkpoints and at the gate; (v) being held in custody for questioning by government agents for hours on each occasion that he arrives from traveling internationally, and (vi) seizure and searching of his personal cellphone and laptop without a warrant." Amended Complaint ¶ 83.

reasons. *See id.* ¶ 89 ("The absence of any objective evidence suggesting that Mr. Assi poses a threat to aviation safety leads to the clear and obvious conclusion that the designation of Mr. Assi is the result of discrimination based on his race, ethnicity, national origin, or some combination of these factors."). This has caused Assi professional harm and personal embarrassment. *See, e.g., id.* ¶ 118 ("Mr. Assi has avoided potentially lucrative business trips and international trips to see his family because of the extreme burden of the enhanced screening whenever Mr. Assi attempts to travel, something that is necessary for his businesses."); *id.* ¶ 125 ("Because of Defendants' actions in improperly labelling Mr. Assi a known or suspected terrorist, Mr. Assi experiences fear and anxiety in travelling and/or engaging with friends and business partners because he does not want them to also be targeted as [ ] 'suspected terrorists.'").

Assi initially tried to resolve this problem out of court. When his TSA PreCheck clearance was revoked, he retained counsel to: (1) send letters to the TSA and Customs and Border Patrol ("CBP") to determine why he "was no longer eligible for PreCheck"; and (2) submit a "Traveler Redress Inquiry Program" ("TRIP") request to the Department of Homeland Security ("DHS") to "understand whether he was named on any DHS watch lists." *Id.* ¶¶ 90–91. DHS responded to the TRIP request on May 21, 2021, but "Mr. Assi was not removed from any watch lists he may be in nor was his designation for enhanced scrutiny terminated, and he received no explanatory response to either of his letters." *Id.* ¶ 92. Assi sought review of DHS's decision in the Ninth Circuit, but he dismissed that lawsuit "when the FBI agreed to provide Mr. Assi with an opportunity to present information to and be subject to questioning by an agent or agents of the FBI." *Id.* ¶ 93. This interview didn't help because the FBI "showed little interest in the information Mr. Assi provided," and "Mr. Assi was not removed from the list and continued to be unnecessarily subjected to intensive screening at U.S. airports[.]" *Id.* ¶¶ 95–96.

On September 29, 2022, Assi again tried "to correct DHS and TSA's understanding of his situation" by submitting "over 500 pages of documentation . . . to show that he presents no threat to aviation safety." *Id.* ¶ 97. Assi alleges that the Defendants never "reviewed or considered" this new information and that, despite sending a new "boiler-plate letter" insisting that they had made "corrections to [their] records[,]" the Defendants didn't remove Assi from the TSDB and continue to subject him to enhanced scrutiny. *Id.* ¶¶ 98–99.

Assi requests injunctive and declaratory relief in each of the Amended Complaint's seven counts. Count I alleges that the Defendants violated the Administrative Procedure Act ("APA") by arbitrarily placing him on the TSDB for discriminatory reasons. *See id.* ¶ 137 ("The TSC's decision to place Mr. Assi on one or more rules-based terror targeting lists was likewise based in substantial part on his race, ethnicity, national origin, religious affiliation, or First Amendment protected activities[.]"). Count II alleges that the Defendants violated the APA by failing to "properly review, address, and/or respond to Mr. Assi's DHS TRIP Requests[.]" *Id.* ¶ 145. Counts III and IV assert that Assi's placement on the TSDB—and the Defendants' failure to properly adjudicate his TRIP requests—violate his procedural and substantive due-process rights under the Fifth Amendment. *See id.* ¶ 156 ("By imposing on Mr. Assi the stigmatizing label of 'known or suspected terrorists' or 'terrorists,' and by failing to provide Mr. Assi with a constitutionally adequate legal mechanism to challenge that designation, Defendants have deprived Mr. Assi of his protected liberty interests."); ¶ 172 ("Mr. Assi's [substantive-due-process] rights were infringed upon by the government via the designation of Mr. Assi as a high risk traveler, and through possible inclusion on a terror watch list, without any legitimate reason[.]"). Counts V and VI allege that the Defendants violated Assi's Fourth Amendment rights by illegally seizing "Mr. Assi's electronic devices[,]" *id.* ¶ 190, and his person, *see id.* ¶ 199. Finally, in Count VII, Assi asserts that his equal-protection rights have been violated because the Defendants "selectively

apply and enforce watch list and screening policies to individuals, such as Mr. Assi, who appear to be or who are known or suspected to be Muslim or Middle Eastern." *Id.* ¶ 204.

### THE LAW

A motion challenging our subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1) may take the form of either a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). A "factual attack" instead "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). In considering a factual attack on jurisdiction, "a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will

reveal evidence' of the required element." *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). And the "moving party bears the burden to show that the complaint should be dismissed." *Spring Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1229 (S.D. Fla. 2014) (Cohn, J.) (quoting *Mendez-Arriola v. White Wilson Med. Ctr., P.A.*, 2010 WL 3385356, at *3 (M.D. Fla. Aug. 25, 2010) (Rodgers, J.)).

## ANALYSIS

### I.     Subject-Matter Jurisdiction

#### A.  Two Preliminary Jurisdictional Matters

Before we get into the parties' primary arguments, we'll quickly address two points Assi concedes. *First*, the Defendants say that Assi's "broad request for 'monetary damages for Defendants' wrongful actions,' is barred by sovereign immunity." MTD at 16 (quoting Amended Complaint at 47). Assi claims that no "such request is pleaded" in the Amended Complaint and that the language the Defendants cite was merely designed to "preserve[ ] Mr. Assi's right" to "seek leave from the Court to seek monetary damages" if that option were ever available. Response at 18 n.5. Our reading of the Amended Complaint comports with Assi's concession, *see* Amended Complaint ¶ 13 ("As a result of Defendants' actions, Mr. Assi seeks injunctive relief, for the removal of Mr. Assi from any watch lists and/or other forms of targeting which result in his selection for enhanced scrutiny."); *see also id.* at 46–47 (requesting declaratory and injunctive relief), so there's no need to delve further into the Defendants' sovereign-immunity argument. To be clear, though, to the extent Assi intended to

advance a claim for monetary damages, that claim would be dismissed as barred by sovereign immunity.

*Second*, the Defendants ask us to dismiss four of the named Defendants—DHS, the Secretary of Homeland Security, the Attorney General, and the Director of the National Counterterrorism Center—"against whom there are no well-pleaded factual allegations related to any of the alleged misconduct." MTD at 34. Assi "does not oppose their dismissal[.]" Response at 34. Since both parties agree on this point, we'll **DISMISS** DHS, the Secretary of Homeland Security, the Attorney General, and the Director of the National Counterterrorism Center from this case.

### B. The Primary Jurisdictional Arguments

The Defendants launch a facial attack on Counts I–III of the Amended Complaint. According to the Defendants, 49 U.S.C. § 46110 requires that all "challenges to the adequacy of DHS TRIP and TSA enhanced screening policies and procedures . . . be brought first in the courts of appeals." MTD at 13. Since Counts I–III (the Defendants say) are effectively "challenges to the adequacy of Defendants' redress process," they fall under § 46110's "broad" purview and cannot be raised in district court. *Id.* at 14. In his Response, Assi argues that § 46110's "exclusive jurisdiction" provision "extends only to an 'order' issued by the Administrator of the TSA." Response at 10. Under Assi's interpretation of § 46110, then, we *do* have jurisdiction over Counts I–III because none of those counts challenge an "order" by the TSA Administrator. Neither side really gets this one right.

Under 49 U.S.C. § 46110(a), "a person disclosing a substantial interest in an order issued by the Secretary of Transportation [or the Administrators of the TSA and FAA] . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." If an agency "action is an 'order' within the

meaning of [§ 46110(a)], a court of appeals would have exclusive jurisdiction to review that order." *Green v. Brantley*, 981 F.2d 514, 518 (11th Cir. 1993); *see also Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1254 (9th Cir. 2008) ("Section 46110 grants exclusive jurisdiction to the federal courts of appeals to review the orders of a number of agencies, including the Transportation Security Administration."). An agency's action doesn't constitute an "order" under § 46110 "unless and until [it] impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process." *Green*, 981 F.2d at 519 (quoting *Aeromar, C. Por A v. Dep't of Transp.*, 767 F.2d 1491, 1493 (11th Cir. 1985)); *see also Clayton Cnty., Ga. v. Fed. Aviation Admin.*, 887 F.3d 1262, 1266 (11th Cir. 2018) ("To be [a final order], two requirements must be met. First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." (cleaned up)).

So, to determine whether § 46110's jurisdiction-stripping provision applies, we must first identify which actions Assi is challenging in each of his first three counts. Count I concerns the "Defendants' nomination [and placement] of Mr. Assi to the TSDB[.]" Amended Complaint ¶ 132. Count II is about the Defendants' alleged failure to "properly review, address, and/or respond to Mr. Assi's DHS TRIP Requests[.]" *Id.* ¶ 145. And Count III, like Count II, focuses on the adequacy of DHS's TRIP redress process. *See* Response at 15 ("Count III alleges that the DHS TRIP redress process 'wholly fails to provide Mr. Assi with an adequate opportunity to be heard' and, as a consequence, 'Mr. Assi is allowed no meaningful opportunity to contest his placement on watch lists and designation for enhanced scrutiny.'" (quoting Amended Complaint ¶ 157)). After careful review, we find that we have jurisdiction over Count I—which challenges Assi's initial placement on the TSDB—but not Counts II or III, which contest the sufficiency of the DHS's TRIP redress process.

Starting with Count I, the Amended Complaint explains that the Terrorist Screening Center ("TSC")—"an interoffice agency of the United States government established by the Attorney General and administered by the Federal Bureau of Investigation"—is tasked with maintaining the TSDB. Amended Complaint ¶ 18. In other words, the TSA, the agency implicated in § 46110, "is completely uninvolved in both the nomination or selection procedure through which Mr. Assi alleges he was improperly included in the TSDB and selected for repeated, enhanced screening." Response at 10. Since the TSC "isn't part of the [TSA] or any other agency named in section 46110[,]" putting Assi on the TSDB "was an 'order' of an agency *not* named in section 461110," so we have "jurisdiction to review that agency's order under the APA." *Ibrahim*, 538 F.3d at 1255; *see also Ege v. U.S. Dep't of Homeland Sec.*, 784 F.3d 791, 797 (D.C. Cir. 2015) ("Relying on section 46110 as the jurisdictional basis of our review, Ege seeks removal of his alleged inclusion on the No–Fly List and in the TSDB. The agencies whose actions are reviewable under section 46110, however, have no authority to decide whose name goes on the No–Fly List."); *Mokdad v. Lynch*, 804 F.3d 807, 812 (6th Cir. 2015) ("To the extent that Mokdad brings a direct challenge to his placement by TSC on the No Fly List, however, he is challenging a TSC order, not a TSA order. . . . The fact that TSC is an interagency center that is staffed by officials from multiple agencies, including the FBI, DHS, Department of State, Customs and Border Protection, and also TSA, does not transform TSC's order placing an individual on the No Fly List into an order of the TSA."); *Khalid v. Garland*, 2023 WL 2561943, at *4 (D.D.C. Mar. 16, 2023) ("Section 46110, however, does not bar challenges in district court to one's inclusion on the broader terrorist watchlist. The TSC administers the TSDB watchlist and has final authority regarding placement on the list, and the TSA Administrator does not issue a final order affirming TSDB

listings.'").[3] In short, we're satisfied that we "retain[ ] jurisdiction to review [the TSC's order placing Assi on the TSDB] under the APA." *Ibrahim*, 538 F.3d at 1255.

We come out the other way on Counts II and III. While our survey of the relevant caselaw strongly supported Assi's position on Count I, the logic of these same cases suggests that we *don't* have jurisdiction over challenges to the DHS's TRIP redress system. While the TSC is supposed to place a traveler on the TSDB, DHS and/or the TSA are responsible for managing the redress program (*i.e.*, TRIP), which "determines whether the traveler's record should remain in the TSDB, be modified, or be removed." Amended Complaint ¶ 55; *see also* 49 C.F.R. § 1560.205(d) ("TSA, in coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response."). Because the TSA Administrator "is solely responsible for issuing a final order maintaining a traveler on the [TSDB]," "§ 46110 grants the courts of appeals, rather than the district courts, exclusive jurisdiction" over claims challenging TRIP procedures. *Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019); *see also Salloum v. Kable*, 2020 WL 7480549, at *12 (E.D. Mich. Dec. 18, 2020) ("Here, Salloum seeks to challenge the adequacy

---

[3] The Defendants contend, without any supporting citation, that "any challenge to the processes for seeking redress for [TSDB] nomination, selection, modification, or removal is necessarily a challenge to a TSA order." Reply at 4. But this position has been repeatedly rejected. *See Ibrahim*, 538 F.3d at 1255 ("The government also argues that, even if the decision to put Ibrahim's name on the No–Fly List wasn't an 'order' of the [TSA], it was 'inescapably intertwined' with that agency's orders and is therefore still reviewable under section 46110. But the statute provides jurisdiction to review an 'order'—it says nothing about 'intertwining,' escapable or otherwise. The government advances no good reason why the word 'order' should be interpreted to mean 'order or any action inescapably intertwined with it.'"); *Ege*, 784 F.3d at 815 ("In sum, we decline to accept the government's invitation to expand the inescapable-intertwinement doctrine so as to find that Mokdad's claim against the TSC is pulled within the ambit of the exclusive-review statute that applies to TSA. Doing so not only would be inconsistent with existing law but also would run the risk of inadvertently expanding the number and range of agency orders that might fall under exclusive-jurisdiction provisions that Congress did not intend to sweep so broadly.").

of the DHS TRIP redress process. As described in detail above, that process was created by a final order of the TSA. Therefore, Salloum's challenge to the DHS TRIP redress process is a challenge to a final TSA order, and 'exclusive jurisdiction' over the challenge rests in the courts of appeal.").

Assi advances two compelling, but ultimately unavailing, counterarguments. *First*, Assi says that the TSC—not the TSA—is ultimately required "to make a final determination regarding modification or removal from the TSDB or enhanced screening[.]" Response at 13. Some district courts have adopted this position, reasoning that § 46110 doesn't apply to DHS TRIP challenges because the TSC is too intimately involved in that procedure. *See El Ali v. Barr*, 473 F. Supp. 3d 479, 504 (D. Md. 2020) ("Where, as here, TSC remains the driving force behind DHS TRIP, challenges to adequacy of the procedure are not subject to Section 46110 channeling."); *Abu Irshaid v. Garland*, 2025 WL 756544, at *7 (E.D. Va. Mar. 10, 2025) ("[T]his Court finds that the weight of authority and the text of Section 46110 do not preclude its jurisdiction over Plaintiffs' challenges to their placement on the watchlist or the DHS TRIP process. . . . And as the court in *El Ali* outlined in detail, TSC, an agency not covered by [§] 46110, remains integral to any DHS TRIP procedures for individuals on the watchlist.").

These courts rely principally on the Ninth Circuit's decision in *Latif v. Holder*, which reasoned that "TSC—not TSA—actually reviews the classified intelligence information about travelers and decides whether to remove them from the List," and that "TSC—not TSA—[] established the policies governing . . . the redress process." 686 F.3d 1122, 1128 (9th Cir. 2012). But the Ninth Circuit itself later recognized that the Government "revised the DHS TRIP procedures" in 2015—changes that made "the TSA Administrator alone—not the [TSC]—responsible for issuing a final order[.]" *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 773–74 (9th Cir. 2022). Both the text of the relevant regulation and Assi's own allegations in the Amended Complaint confirm that the TSA, not the TSC, is now the

final decisionmaker. *See* 49 C.F.R. § 1560.205(d) ("TSA, in coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response."); Amended Complaint ¶ 54 (same). These cases thus don't help Assi here.

*Second*, Assi directs us to Judge Nelson's concurring opinion in *Magassa v. Mayorkas*, where—after criticizing prior precedent—Judge Nelson explained that "agency policies or procedures" are not "orders" and thus "lie outside § 46110[.]" 52 F.4th 1156, 1172 (9th Cir. 2022) (Nelson, J., concurring); *see also* Response at 17 ("Adopting Judge Nelson's concurrence—limiting 'orders' under Section 46110 to 'orders' as defined by the APA—has the benefit of both 'fidelity to the text' of Section 46110 and easy administrability."). If we were writing on a clean slate, we might agree with Judge Nelson's position: We too don't see how "agency rules, policies, or procedures" can fairly be categorized as "orders." *Magassa*, 52 F.4th at 1170 (Nelson, J., concurring). But, like the Ninth Circuit, the Eleventh Circuit has a similarly broad view of what constitutes an "order" under § 46110. *Compare id.* at 1165 ("[A]gency decisions are agency orders under § 46110 if they impose an obligation, deny a right, or fix some legal relationship." (cleaned up)), *with Green*, 981 F.2d at 519 ("FAA orders are not final and reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." (cleaned up)). Unpublished Eleventh Circuit cases decided since *Green* have repeatedly relied on this "expansive" definition of the term "order." *See Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 973 (11th Cir. 2011) ("The term 'order' in the statute has been given expansive instruction. Although the issue has not arisen in this Court, the D.C. Circuit has stated that the statute could encompass 'direct review of regulations promulgated through informal notice-and-comment rulemaking.'" (cleaned up) (quoting *City of Rochester v. Bond*, 603 F.2d 927, 933

n.26 (D.C. Cir. 1979))); *Corbett v. United States*, 458 F. App'x 866, 869 (11th Cir. 2012) ("The term 'order' in § 46110 is construed broadly, and courts of appeals have jurisdiction over final orders."). So while we might agree with Assi (and Judge Nelson) that courts have stretched the meaning of "order" far beyond what Congress might have intended, "we are duty-bound to apply this Court's precedent" until that precedent is overturned by the Supreme Court or the Eleventh Circuit sitting en banc. *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015).[4]

The scope of § 46110 remains a disputed issue. But after carefully reviewing the relevant precedents, we conclude that, while we have jurisdiction to review Assi's initial placement on the TSDB, we lack jurisdiction to evaluate *how* the Defendants adjudicated Assi's TRIP request. We therefore **DISMISS** Counts II and III (but not Count I) for lack of subject-matter jurisdiction.

## II.     The Merits

### A.  The Procedural Due Process Claim (Count III)[5]

---

[4] In any event, Judge Nelson's position would only save Count III of the Amended Complaint—which attacks the constitutional adequacy of DHS's TRIP redress program as a whole. *See Magassa*, 52 F.4th at 1170 (Nelson, J., concurring) ("An order, properly understood, should not include agency rules, policies, or procedures."). Even under Judge Nelson's analysis, in other words, Count II, which challenges *how* the Defendants adjudicated Assi's individualized TRIP request under the APA, would still fall under § 46110's definition of an "order." *See id.* at 1171 ("This does not mean that challenging an agency policy or procedure can be an automatic shortcut to district court jurisdiction where it would not otherwise exist. Instead, the procedural challenge must be a general, collateral challenge to an agency's procedures: A prevailing plaintiff would not receive direct relief, but only the benefit of having their case reconsidered in light of the newly prescribed procedures." (cleaned up)).

[5] For two reasons, we'll address the merits of Count III, even though we've already dismissed that count for lack of subject-matter jurisdiction. *First*, we share Judge Nelson's concern that § 46110 wasn't designed to strip district courts of our authority to adjudicate constitutional challenges to an agency's *process*—as opposed to a specific final decision—so we think it best to adjudicate Count III's merits in case we underestimated the extent of our own jurisdiction. *See Magassa*, 52 F.4th at 1169 (Nelson, J., concurring) ("In my view, the plain meaning of 'order,' which § 46110 does not define, does not include agency policies or procedures like the Redress Process."). *Second*, since there's significant overlap between Counts III and IV, discussing Count III's merits will aid, rather than hinder, judicial economy by disposing of the issues before us in a more efficient way.

In Count III, Assi contends that his placement on the TSDB without meaningful notice or an opportunity to be heard violated his procedural due process rights under the Fifth Amendment. *See* Amended Complaint ¶ 154 ("All U.S. citizens adversely affected by the terrorist watch list are entitled to a constitutionally adequate legal mechanism that affords them full notice of the reasons and bases for their placement and a meaningful opportunity to contest their continued inclusion. Yet Defendants have failed to provide the most basic ingredients of due process, which is notice and a meaningful opportunity to be heard."). Specifically, Assi maintains that the Defendants' decision to subject him to enhanced screening without process infringed on his "constitutionally protected liberty interest in his freedom of movement" and his "constitutionally protected liberty interest . . . in being free from the stigma of being treated as a second class citizen and security risk." *Id.* ¶¶ 148–49.[6] The Defendants respond that Assi hasn't "plead deprivation of any constitutionally protected liberty interest[,]" MTD at 18, and that—even if he had—DHS's TRIP system "provides more than adequate procedures to protect [Assi's constitutionally protected liberty] interests[,]" *id.* at 23.

Under the Fifth Amendment, the Government may not deprive a person "of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. "An essential principle of due process

---

[6] The Amended Complaint also suggests that Assi was deprived of his "right of association" and his right to be "free from detention and punishment without conviction or trial." Amended Complaint ¶ 149. Although the Defendants argued that these claims should be dismissed, *see* MTD at 22–23, Assi never responded to their arguments and instead focused on his right to travel and his right to be free from government-imposed stigma, *see* Response at 18 ("Mr. Assi alleges that he has a protected liberty interest in, among other things, his right to travel and his right in his reputation."). Assi has thus abandoned any claim that the Defendants unconstitutionally infringed on his "right of association" and his right to be "free from detention and punishment without conviction or trial." *See* Reply at 6 ("Plaintiff has abandoned any claim that he has been deprived of any alleged right to freedom of association or freedom from punishment without conviction."); *Med-Stop, Inc. v. Vandutch, Inc.*, 2025 WL 26731, at *8 (S.D. Fla. Jan. 3, 2025) (Altman, J.) ("Med-Stop never responded to this argument, so it has forfeited any right to challenge it." (citing *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014))).

is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). "A plaintiff raising a procedural-due-process claim must show (1) a deprivation of constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Howard v. Coonrod*, 134 F.4th 1136, 1149 (11th Cir. 2025). Since neither party disputes that the Defendants' decision to place Assi on the TSDB and to subject him to enhanced screening at airports constitutes "state action," the briefing focuses on whether Assi can show that the Defendants deprived him of a constitutionally protected liberty interest without adequate process. Because we find that the Defendants haven't deprived Assi of a constitutionally protected liberty interest, we won't address the "adequate process" prong.

For starters, the Defendants haven't violated Assi's "right to freely travel[.]" Amended Complaint ¶ 148. The "right to travel . . . embraces at least three different components": (1) "[i]t protects the right of a citizen of one State to enter and to leave another State"; (2) it guarantees "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State"; and (3) it ensures that "travelers who elect to become permanent residents" of a new State will "be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). "[M]ere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel." *Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005).

Assi's "right to travel" argument is a non-starter. As the Defendants correctly point out, *every* circuit court to consider this issue has held that "travel delays resulting from purported status on a

terrorist watchlist are not cognizable deprivations of liberty for procedural due process purposes." MTD at 18; *see also Beydoun v. Sessions*, 871 F.3d 459, 468 (6th Cir. 2017) ("While Plaintiffs may have been inconvenienced by the extra security hurdles they endured in order to board an airplane, these burdens do not amount to a constitutional violation. Importantly, Plaintiffs have not actually been prevented from flying altogether or from traveling by means other than an airplane."); *Abdi v. Wray*, 942 F.3d 1019, 1032 (10th Cir. 2019) ("Neither the extra security measures that Abdi endured due to his placement on the Selectee List nor the forty-eight-hour delay he experienced trying to fly home from Nairobi deprived him of a constitutional right; those impediments merely reasonably encumbered his ability to travel interstate and internationally and by only one mode of transportation."); *Elhady v. Kable*, 993 F.3d 208, 222 (4th Cir. 2021) ("But even if we accepted plaintiffs' assertions that these inconveniences have actually deterred them from flying, our analysis would stand firm. Many courts have held that individuals do not have a protected liberty interest to travel via a particular mode of transportation. Plaintiffs can travel domestically without interference by train or automobile. Plaintiffs can travel internationally by boat or by taking some later flight. No plaintiff alleges he is unable to get to a particular destination because of the TSDB. That is decisive." (cleaned up)); *Ghedi v. Mayorkas*, 16 F.4th 456, 466 (5th Cir. 2021) ("His complaint alleges, in support, that he must get his boarding pass at the airport, has experienced extra searches after returning from international flights, has missed some flights, and has been removed twice from an airplane after boarding. But Ghedi never alleges that he was prevented from ultimately getting to his final destination. At most, these allegations lead to a reasonable inference that the Government has inconvenienced Ghedi. But they do not plausibly allege a deprivation of Ghedi's right to travel."). We see no reason to depart from these persuasive precedents. After all, Assi admits that he *can* still travel by airplane. The only harm he identifies is that the Defendants' "enhanced screening" "adds

16

approximately two hours to the amount of time Mr. Assi would normally take to travel[.]" Amended Complaint ¶ 86. That Assi can travel "domestically without interference by train or automobile" *and* still fly by air (albeit with additional delays) eviscerates his contention that the Defendants have impermissibly abridged his right to travel. *Elhady*, 993 F.3d at 222; *see also Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140–41 (2d Cir. 2010) ("[W]e have made clear that travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right. . . . [T]he most-inconvenienced plaintiff was delayed a little over one day. This was a minor restriction that did not result in a denial of the right to travel.").

Still resisting, Assi advances two counterarguments—both unpersuasive. *First*, Assi tries to distinguish his case from the four other circuit court cases we've cited on the ground that his career *requires* him to travel between "his residence in Miami and his office in Las Vegas"—a trip that's only feasible by air. Response at 19. By restricting his ability to fly between Miami and Las Vegas, Assi argues, the Defendants have effectively obstructed "his ability to travel between the two cities he must frequently travel (Las Vegas and Miami) on every single occasion that he travels by air, and that there is no other practical means for him to do so." *Id.* at 20 (citing Amended Complaint ¶ 159). While we agree with Assi that the Defendants have made it more *difficult* for him to travel between Miami and Las Vegas, this difficulty isn't insurmountable. As we've said, the delays Assi faces when he flies domestically don't foreclose him from traveling by air. *See Beydoun*, 871 F.3d at 468 ("When Plaintiffs' only allegations amount to delays that many individuals are likely to experience at the airport, it is hard to conclude that the fundamental right to travel has been implicated."). And while traveling to Las Vegas by car, bus, or train would be less convenient than flying, Assi can't plausibly allege that "he is *unable* to get to particular destination because of the TSDB." *Elhady*, 993 F.3d at 222 (emphasis added); *see also Moore*, 410 F.3d at 1348 ("[The plaintiffs] argue that it is inconvenient to travel from their

permanent residence because the Sex Offender Act requires them to notify Florida law enforcement in person when they change permanent or temporary residences. Though we recognize this requirement is burdensome, we do not hold it is unreasonable by constitutional standards, especially in light of the reasoning behind such registration." (footnote omitted)); *Ghedi*, 16 F.4th at 466 ("But Ghedi never alleges that he was prevented from ultimately getting to his final destination. At most, these allegations lead to a reasonable inference that the Government has inconvenienced Ghedi.").

*Second*, Assi claims that, because of the "repeated, consistent delays impeding his only viable means of travel" over a "nearly four-year period," his travel rights were impaired to a more significant degree than those of the plaintiffs in the other cases we've cited. Response at 21–22. We disagree. The Fifth and Tenth Circuits *specifically* held that repeated and consistent delays at airports don't violate a person's right to travel. *See Abdi*, 942 F.3d at 1023 ("Abdi alleges that, since 2014, he has been subject to extended security screenings each time he travels by air due to his placement on the Selectee List."); *Ghedi*, 16 F.4th at 466 ("[The plaintiff's] complaint alleges, in support, that he must get his boarding pass at the airport, has experienced extra searches after returning from international flights, has missed some flights, and has been removed twice from an airplane after boarding. . . . At most, these allegations lead to a reasonable inference that the Government has inconvenienced Ghedi. But they do not plausibly allege a deprivation of Ghedi's right to travel."). The law is thus clear that the inconveniences Assi complains about don't impermissibly violate his constitutional right to travel.

As for Assi's "right" to be free from unfair stigmatization, an "injury to reputation, by itself, does not constitute the deprivation of a liberty [interest] . . . . Damages to a plaintiff's reputation are only recoverable . . . if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized legal rights." *Rehberg v. Paulk*, 611 F.3d 828, 851–52 (11th Cir. 2010) (cleaned up). Under this "stigma-plus test," a plaintiff must both "establish the fact

18

of defamation" *and* show "the violation of some more tangible interest" arising from the alleged defamation. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing *Paul v. Davis*, 424 U.S. 693, 701–02 (1976)); *see also Rehberg*, 611 F.3d at 852 ("The 'stigma-plus' test requires not only allegations stating a common-law defamation claim, but also an additional constitutional injury, tied to a previously recognized constitutional property or liberty interest, flowing from the defamation."); *Cendan v. Sch. Bd. of Broward Cnty., Fla.*, 628 F. Supp. 3d 1191, 1202 (S.D. Fla. 2022) (Altman, J.) ("[The 'stigma-plus test'] requires the Plaintiff to show both a valid defamation claim (the stigma) *and* the violation of some more tangible interest (the plus)." (cleaned up)). "Thus, to prevail on a claim that government action deprived the plaintiff of a liberty interest in reputation, the plaintiff must show: (1) a stigmatizing allegation; (2) dissemination or publication of that allegation; and (3) loss of some tangible interest due to publication of the stigmatizing allegation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1367 (11th Cir. 1993) (cleaned up).

Assi hasn't plausibly alleged that he can meet the "stigma-plus" test here. For one thing, the Defendants never publicized a "stigmatizing allegation." *Ibid.* After all, the "government does not publicly disclose TSDB status." *Elhady*, 993 F.3d at 225; *see also Ghedi*, 16 F.4th at 367 ("Ghedi's status on the Selectee List is a Government secret. Simply put, secrets are not stigmas. The very harm that a stigma inflicts comes from its public nature."). True, Assi alleges that he gets "pulled out of line at the security checkpoint, 'in full view of other passengers,'" "is also 'escorted to the gate and remains under government surveillance until he boards the plane,' again in full view of other passengers," and "is also subjected to extensive interrogation, questioning, and invasive pat downs in full view of other passenger on every single occasion that he travels internationally." Response at 23 (quoting Amended Complaint ¶¶ 7, 59). But these frequent searches and screenings—even when conducted in front of other passengers—aren't enough to establish reputational harm because this kind of "enhanced

screening" doesn't "publicize" Assi's placement on the TSDB or imply that Assi is somehow associated with terrorism. *See United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006) ("Since every air passenger is subjected to a search, there is virtually no 'stigma attached to being subjected to search at a known, designated airport search point.'" (quoting *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973))); *Beydoun*, 871 F.3d at 469 (rejecting reputational-harm claim alleging "that [the plaintiffs] have been routinely humiliated by being singled out for screening, and that their reputation was harmed because those around them when they travel could infer that they were suspected of terrorism"); *Scherfen v. U.S. Dep't of Homeland Sec.*, 2010 WL 456784, at *7 (M.D. Pa. Feb. 2, 2010) ("Heightened screening at airports and border-crossing points does not necessarily signify inclusion in the TSDB. Travelers may be pulled out of line, searched, and questioned for a variety of reasons, unrelated to watch lists.").[7] Assi thus hasn't suffered reputational harm at the hands of the Defendants.

Even if the Defendants had disseminated unfavorable information about Assi to the public (they didn't), Assi *still* fails to plead any "plus factor." *See Cannon*, 250 F.3d at 1302 ("[A] plaintiff claiming a deprivation based on defamation by the government must establish the fact of the

---

[7] Assi suggests that his "reputation" has become public because "TSA officers" in Miami and Las Vegas "recognize him by sight[.]" Response at 24. The Amended Complaint also alleges that certain "airport security workers" must be aware of his status because they receive an "alert" that Assi is a "known or suspected terrorist[.]" Amended Complaint ¶ 59. But the limited disclosure of Assi's placement on the TSDB to government employees and authorized airport workers doesn't constitute the kind of "publication" that's sufficient to cause reputational harm. *See Elhady*, 993 F.3d at 225 ("The federal government's intragovernmental dissemination of TSDB information to other federal agencies and components, to be used for federal law enforcement purposes, is not 'public disclosure' for purposes of a stigma-plus claim."); *Ahmed v. Kable*, 2023 WL 6215024, at *17 (D.D.C. Sept. 25, 2023) (Kelly, J.) ("As Plaintiff put it, information in the TSD is available to various participating agencies, and perhaps foreign governments. But such disclosures are not public and so cannot support Plaintiff's claim. Indeed, Plaintiff acknowledges that the government has never confirmed his TSD status even to Plaintiff himself." (cleaned up)); *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1274 (D. Or. 2014) ("Disclosures to other government agencies or to an opposing litigating party are not 'public' for purposes of 'stigma plus.'" (citing *Bishop v. Wood*, 426 U.S. 341, 348–49 (1976))).

defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause."). In his Response, Assi identifies two "tangible interests" that (he says) are at stake here: (1) his inability to "grow[ ] his business through lucrative business deals within and outside the United States"; and (2) the "revocation of TSA PreCheck status[.]" Response at 24 (quoting Amended Complaint ¶ 158). Neither loss is sufficient to establish constitutional harm.

As for the alleged loss of "lucrative business deals," Assi hasn't identified a single business deal he lost because of his placement on the TSDB—nor has he explained, except in the most conclusory terms, *how* his TSDB placement has prevented him from growing his business. *See generally* Amended Complaint. Assi has thus failed to allege that any "lucrative business deal" was "altered or extinguished" by the Defendants. *Paul*, 424 U.S. at 711; *cf. Elhady*, 993 F.3d at 226–27 ("Plaintiffs cannot make this 'plus' showing because they have not demonstrated that TSDB status has altered their legal status or extinguished rights. . . . The plaintiffs have not actually alleged an inability to gain employment, obtain permits or licenses, or acquire firearms."); *Abdi*, 942 F.3d at 1033 ("The allegations in support of Abdi's stigma-plus argument suffer from two infirmities. First, Abdi failed to specifically allege that he has actually been prevented from participating in any of the above activities. His allegations are entirely speculative.").

We also agree with the Defendants that "TSA PreCheck status is not a legal right"—and so, its revocation cannot "give rise to a 'plus' factor[.]" Reply at 9. In *Behrens v. Regier*, the Eleventh Circuit held that an "alleged right or status" must be "recognized and protected" under the law to qualify as a constitutionally protected "tangible interest." 422 F.3d 1255, 1261 (11th Cir. 2005); *see also Al-Turki v. Tomsic*, 926 F.3d 610, 619 (10th Cir. 2019) ("In this case, Plaintiff has not established the plus factor necessary to create a protected liberty interest. Executive director Clements's letter approving

Plaintiff's transfer application conferred no state-recognized right or status upon him. The [Colorado Department of Corrections] regulation is clear: 'Transfer is a privilege *and not a right*.'" (cleaned up)). TSA PreCheck—like other similar programs that allow for expedited security screenings at airports— is a discretionary privilege the government confers on some (but not all) eligible travelers; it's therefore not a protected legal right. *See Roberts v. Napolitano*, 792 F. Supp. 2d 67, 73–74 (D.D.C. 2011) ("Congress committed to the defendants the sole discretion to determine eligibility guidelines and evaluate applicants [for the Global Entry program].''); *Deck v. California*, 2022 WL 4486138, at *5 (C.D. Cal. Sept. 1, 2022) ("Ineligibility for TSA PreCheck is not an ineligibility to travel. It is, at most, an inconvenience to require petitioner to proceed through the normal security lines at airports."), *aff'd*, 2023 WL 5696531 (9th Cir. Sept. 5, 2023); *see also Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1026 n.1 (9th Cir. 2024) (VanDyke, J., dissenting) ("Like TSA precheck, which travelers are perhaps more familiar with, SENTRI membership is a privilege, not a right."). Much like the "enhanced screening" procedures we discussed above, the Defendants' decision to revoke Assi's TSA PreCheck status doesn't prevent him from traveling by air. *See ante*, at 15–18. In short, TSA PreCheck isn't a "right or status [that] has been previously recognized and protected under . . . law[,]" *Behrens*, 422 F.3d at 1261 (citing *Paul*, 424 U.S. at 710–11), so it can't be a "plus factor."

Since Assi cannot show that the Defendants deprived him "of [a] constitutionally protected liberty or property interest[,]" *Howard*, 134 F.4th at 1149, his procedural due process claim fails as a matter of law. Accordingly, Count III of the Amended Complaint is **DISMISSED**.

### B. The Substantive Due Process Claim (Count IV)

In Count IV, Assi alleges that the Defendants' decision to place him on the TSDB "despite lacking any reasonable suspicion that Mr. Assi is a known, suspected, or potential terrorist," violated his substantive due process rights under the Fifth Amendment. Amended Complaint ¶ 164. Assi

contends that his "fundamental rights" to "be free from discrimination[,]" "to freely travel," to be "free from the stigma of being designated a terror risk[,]" and to be "free from punishment without conviction or trial" were "infringed upon by the government via the designation of Mr. Assi as a high risk traveler[.]" *Id.* ¶¶ 168–72.

The Fifth Amendment's Due Process Clause "guarantees more than fair process"; it also "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997). "[S]ubstantive due process" thus protects "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 720–21 (cleaned up); *see also McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) ("The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty[.]'" (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937))).

The doctrine of substantive due process is meant to "protect[ ] against government power arbitrarily and oppressively exercised" and to ward off "executive abuse of power . . . which shocks the conscience." *Carr v. Tatangelo*, 338 F.3d 1259, 1271 (11th Cir. 2003) (cleaned up). So, to assert a viable substantive due process claim, "a plaintiff must allege (1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (cleaned up).

As with Count III, Assi fails to show that the Defendants deprived him of a constitutionally protected interest. Assi insists that his "placement in the TSDB . . . violated his fundamental rights to substantive due process, including the right to travel, the right to be free from discrimination and the

right to reputation." Response at 28.[8] But, in dismissing Count III, we already explained that the Defendants haven't violated Assi's right to travel or his right to be free from reputational harm. *See ante*, at 13–22. As for Assi's claim that the Defendants violated his "right to free from discrimination[,]" he concedes that "his discrimination claim is appropriately addressed under Count VII"—which asserts a cause of action under the Equal Protection Clause. Response at 28 n.8. Assi cannot rely on "the more generalized notion of 'substantive due process,'" when there's another "explicit source of constitutional protection against [the same] governmental conduct[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Without a viable "fundamental liberty interest" to assert, then, Assi's substantive due process claim fails at the first step. We therefore **DISMISS** Count IV.

### C.  The Fourth Amendment Claims (Counts V and VI)

Assi also advances two claims under the Fourth Amendment. In Count V, Assi complains that the Defendants routinely "seize and confiscate [his] electronic devices[,]" "routinely do not return the electronic devices . . . for weeks or months," "download and copy the contents of [his] listed individuals' electronic devices[,]" and "utilize the contents of [his] electronic devices as a source of intelligence." Amended Complaint ¶¶ 184–86. Assi contends that these searches are unreasonable and thus unconstitutional because the Defendants "lack consent, reasonable suspicion, probable cause, or a warrant for their seizures and searches of Ms. [sic] Assi's electronic devices that took place in connection with Mr. Assi's flights." *Id.* ¶ 187. Similarly, in Count VI, Assi says that his "designation for enhanced screening and/or placement in a terror watch list while on both domestic and

---

[8] Assi fails to defend the Amended Complaint's allegation that the Defendants violated his "constitutionally protected liberty interest in being free from punishment without conviction or trial." Amended Complaint ¶ 171; *see also* Reply at 12 ("Plaintiff also concedes, by failing to defend, any interest in freedom from punishment without conviction or trial."). As with that same allegation in Count III, Assi has abandoned this part of his substantive due process claim. *See ante*, note 7.

international travel" constitutes an unreasonable seizure of his person under the Fourth Amendment. *Id.* ¶ 198. The Defendants' position on this issue is simple: These airport searches and seizures are reasonable because the Government "has broad powers to conduct searches and seizures at the border." MTD at 30. We agree.

"The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537 (1985). Airports are "sui generis under the [F]ourth [A]mendment" and, "like international borders, are 'critical zones' in which special [F]ourth [A]mendment considerations apply." *United States v. Herzbrun,* 723 F.2d 773, 775 (11th Cir. 1984). International airports also serve as "the functional equivalent of the border[,]" so law enforcement may conduct "suspicionless searches in certain circumstances." *United States v. Hill,* 939 F.2d 934, 936 (11th Cir. 1991); *see also United States v. Santiago,* 837 F.2d 1545, 1548–49 (11th Cir. 1988) ("The search in the Atlanta airport occurred at the functional equivalent of the border. . . . Because secondary searches do not require any suspicion of illegal activities, the searches at the Atlanta airport were proper."). "[S]earches at the border are reasonable without suspicion 'simply by virtue of the fact that they occur at the border.' . . . [I]t is reasonable to conduct without suspicion 'routine searches of the persons and effects of entrants' at our borders." *United States v. Touset,* 890 F.3d 1227, 1232–33 (11th Cir. 2018) (first quoting *United States v. Alfaro-Moncada,* 607 F.3d 720, 728 (11th Cir. 2010); and then quoting *Montoya de Hernandez,* 473 U.S. at 538).

For Count V, the Defendants principally rely on the Eleventh Circuit's decision in *Touset. See* MTD at 31 ("[T]he Eleventh Circuit has been very clear that at the border, no degree of suspicion is required for any type of electronic search, whether routine or non-routine." (citing *Touset,* 890 F.3d at 1231)). In that case, the Eleventh Circuit held that "the Fourth Amendment does not require any

suspicion for forensic searches of electronic devices at the border." 890 F.3d at 1231; *see also id.* at 1233 ("We see no reason why the Fourth Amendment would require suspicion for a forensic search of an electronic device [at the border] when it imposes no such requirement for a search of other personal property.").

Conceding that *Touset* requires dismissal of Count V, Assi argues only that it was wrongly decided "for the purposes of issue preservation[.]" Response at 32. Assi's objection notwithstanding, we find that his Fourth Amendment rights weren't violated when the Defendants searched and seized his electronic devices without "consent, reasonable suspicion, probable cause, or a warrant[.]" Amended Complaint ¶ 187; *see also United States v. Pulido*, 133 F.4th 1256, 1275 (11th Cir. 2025) ("[F]orensic searches of electronic devices don't require any level of suspicion[.]"). We therefore **DISMISS** Count V.

Count VI is more complicated. The Defendants allege that Assi's various seizures at the airport constitute "routine border inspection[s]" and that lengthy questioning by law enforcement isn't an "undue burden." MTD at 33. Assi appears to agree that seizures like this in the context of *international travel* are permissible, but he insists that "enhanced screening" for domestic flights is unreasonable under the Fourth Amendment. *See* Response at 33 ("With regard to Count VI, the Federal Defendants focus almost solely upon Mr. Assi's three trips abroad, and completely ignore his specific allegations regarding his numerous domestic flights where he was subjected to enhanced screening. . . . Acknowledging the greater latitude granted to the sovereign at the border, these cases say nothing about conduct of the Federal Defendants pertaining to Mr. Assi's domestic travel.").[9]

---

[9] Assi didn't attempt to draw this distinction between domestic and foreign travel to defend Count V. *See* Response at 32. It appears that this was a deliberate choice because the Amended Complaint indicates that the Defendants only searched Assi's electronic devices when he engaged in "international travel." Amended Complaint ¶ 192. So, to the extent Assi could have advanced this

As we see it, though, the question presented in Count VI isn't whether the Defendants can routinely search, seize, and question passengers at airports at any time and without suspicion. The Eleventh Circuit has held that these types of searches pass Fourth Amendment scrutiny. *See Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1179–80 (11th Cir. 2014) ("The Fourth Amendment permits the warrantless search of 'closely regulated' businesses; 'special needs' cases such as schools, employment, and probation; and 'checkpoint' searches such as airport screenings under the administrative search doctrine. Because administrative searches primarily ensure public safety instead of detect criminal wrongdoing, they do not require individual suspicion. . . . The scanners at airport checkpoints are a reasonable administrative search because the governmental interest in preventing terrorism outweighs the degree of intrusion on Corbett's privacy and the scanners advance that public interest." (cleaned up)); *Touset*, 890 F.3d at 1235 ("[T]he Fourth Amendment does not guarantee the right to travel without great inconvenience, even within our borders[.] Anyone who has recently taken a domestic flight likely has experienced inconvenient screening procedures that require passengers to unpack electronic devices, separate and limit liquids, gels, and creams, remove their shoes, and walk through a full-body scanner."); *see also Chandler v. Miller*, 520 U.S. 305, 323 (1997) ("We reiterate, too, that where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable'—for example, searches now routine at airports and at entrances to courts and

---

argument in support of Count V, he has unquestionably waived it. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented ... are deemed waived.").

other official buildings."). Instead, Count VI specifically asks whether "the repetitive and invasive nature" of Assi's "enhanced screening"—while traveling domestically—is unreasonable under the Fourth Amendment. Amended Complaint ¶ 197.

We again find that Assi has failed to plead a plausible Fourth Amendment violation. Some courts (it's true) have suggested that some airport searches beyond the normal "regulatory scheme" require (at a minimum) reasonable suspicion. *See United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1243 (9th Cir. 1989) ("[A]dministrative searches, like all other governmental searches, are subject to the [F]ourth [A]mendment's reasonableness requirement. To the extent that administrative searches are used for purposes other than those contemplated by the regulatory scheme, they may fall outside the rationale by virtue of which we have approved them." (footnote omitted)); *Noell v. Clayton Cnty.*, 2016 WL 11794207, at *4 (N.D. Ga. Sept. 21, 2016) (Totenberg, J.) ("While a limited airport security checkpoint search for weapons or explosives is generally justified by the administrative search doctrine, a post-checkpoint search or a search for contraband or evidence of generic illegal activity is not so justified—and needs to be supported by a warrant or justified by an exception to the warrant requirement."). But, rightly or wrongly, Assi has been placed on the TSDB, which is more than enough of a reason for the Defendants to conduct more intensive searches and seizures on him. *See Rahman v. Chertoff*, 2010 WL 1335434, at *4 (N.D. Ill. Mar. 31, 2010) ("Thus, even if Rahman and Ishaque's inclusion in the TSDB prompted the nonroutine stops, the possibility that the investigations underlying the decision to include them were initiated on 'speculative' leads does not disqualify the TSDB as a basis for probable cause.").[10]

---

[10] We recognize (of course) that Assi thinks his placement on the TSDB is itself unconstitutional. *See* Amended Complaint ¶ 1 ("Mr. Assi brings this action to seek relief and redress from Mr. Assi's wrongful designation for enhanced scrutiny and placement on watch lists by [the Defendants] on or before November 18, 2020."); *see also, e.g.*, Sections II.A, II.B, II.D. But Count VI alleges only that the

Indeed, the D.C. Circuit recently rejected a Fourth Amendment challenge raised by two individuals who had been placed on the TSDB, reasoning that being "detained for a longer duration than a typical enhanced airport inspection" and facing "extended questioning" wasn't an unreasonable seizure under the Fourth Amendment. *Abdellatif v. U.S. Dep't of Homeland Sec.*, 109 F.4th 562, 572 (D.C. Cir. 2024). Assi hasn't produced a single case—nor could we find any—for his view that "enhanced screening" of a person listed on the TSDB is unreasonable under the Fourth Amendment. *See* Response at 34–35. We therefore **DISMISS** Count VI.

### D.  The Equal Protection Claim (Count VII)

Finally, Assi alleges that, in placing him on the TSDB, the Defendants violated his right to equal protection under the law[11] because they engaged in "intentional and purposeful discrimination." Amended Complaint ¶ 205. Assi says that the only factors the Defendants considered before placing him on the TSDB were his race, religion, ethnicity, and/or nationality. *See, e.g., id.* ¶ 203 ("Defendants considered at least the following traits of Mr. Assi as factors for designation as terrorists and inclusion in their watch listing system: national origination from Muslim majority countries, ethnic origination as Arab or Middle Eastern, travel to Muslim-majority countries, family relationships to other Muslims, and associations with other Muslims."); *id.* ¶ 214 ("Defendants' above-described actions specifically

---

Defendants' "seizure of Mr. Assi's person has been and will be for unreasonable lengths of time, *unnecessary even to fulfill the government's illegitimate interest*[.]" (emphasis added)). Count VI thus challenges the reasonableness of the seizures Assi is subjected to, but it doesn't suggest that Assi's *placement* on the TSDB *also* violates the Fourth Amendment.

[11] "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race. It is also true that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976); *see also Miccosukee Tribe of Indians of Fla. v. United States*, 680 F. Supp. 2d 1308, 1317 n.7 (S.D. Fla. 2010) (Moore, J.) ("The Fourteenth Amendment's Equal Protection Clause has been 'reverse-incorporated' into the Fifth Amendment's Due Process Clause.").

target people who are racially Lebanese, of Lebanese ethnicity and/or national origin, and/or people of Muslim religious affiliation for distinctive, disparate, treatment."). The Defendants call Assi's equal-protection claim "contradictory and conclusory" and charge that Assi hasn't alleged any facts showing that the Defendants' decision to place him on the TSDB was "based on discrimination or animus." MTD at 29–30. We agree with the Defendants and find that Count VII falls short of plausibly stating an equal-protection claim.

"The Fifth Amendment's Due Process Clause contains an equal protection component that prohibits the federal government from enacting or enforcing laws that invidiously discriminate between individuals or groups." *United States v. Ferretiz-Hernandez*, 139 F.4th 1286, 1291 (11th Cir. 2025). Put another way, the Government must "treat similarly situated persons in a similar manner." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). The Eleventh Circuit recognizes "'three broad categories' of equal-protection claims—that is to say, three different ways for an aggrieved plaintiff to show discriminatory purpose and effect." *D.N. by Jessica N. v. DeSantis*, 762 F. Supp. 3d 1219, 1230 (S.D. Fla. 2024) (Altman, J.) (citing *E&T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987)). "The first and most common type is a claim that a statute discriminates on its face." *E&T Realty*, 830 F.2d at 1112 n.5. The second kind of equal-protection claim arises when "a facially neutral law . . . produces a disparate impact and a discriminatory purpose was a motivating factor for its enactment." *Ferretiz-Hernandez*, 139 F.4th at 1291. The third and final type of equal-protection claim arises when the defendants "unequally administer[ ] a facially neutral statute." *E&T Realty*, 830 F.2d at 1112 n.5. The throughline for all three types of equal-protection claims is that the defendant's "decision or act [must have] a discriminatory purpose and effect." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999).

Assi is asserting the third type of equal-protection claim: one based on the allegedly unequal

application of a facially neutral policy. *See* Amended Complaint ¶ 204 ("Defendants selectively apply and enforce watch list and screening policies to individuals, such as Mr. Assi, who appear to be or who are known or suspected to be Muslim or Middle Eastern.").[12] So far as we can tell, Assi tries to establish his "unequal application" theory through two allegations. *First*, he says that airport security officers always ask him the same questions about his race, religion, and national origin. *See id.* ¶ 209 ("[E]very time that Mr. Assi is seized for questioning when arriving in the [U]nited States from his international travel, the questions are always the same and are focused on his Lebanese origin, his ties to his family in Lebanon, his religious affiliation, his associations with other persons with Arabic or Muslim origin, and his frequent travel to Lebanon."); *see also id.* ¶ 211 ("Mr. Assi has been subjected to interrogations about his religious practices and beliefs, the answers of which, upon information and belief, are factors that were considered in his designation for enhanced screening and inclusion to the federal terrorist watch list."). *Second*, he alleges that he's treated differently (and worse) than other similarly situated "American-born" travelers. *See id.* ¶ 215 ("Mr. Assi's American-born business partners, as well as other American international business travelers, are not subjected to enhanced scrutiny nor to placement on watch lists despite being similarly situated to Mr. Assi in all ways other than national origin. Inversely, other Muslim-American international business travelers are subjected

---

[12] The Defendants incorrectly argue that Assi is advancing the "second type of equal protection claim"—which applies when the "neutral application of a facially neutral statute has a disparate impact." *E&T Realty*, 830 F.2d at 1112 n.5; *see also* MTD at 29 ("Where the claimed differential treatment is based on a facially neutral law or policy, Plaintiffs must allege facts that demonstrate a disparate impact on a protected group and that such impact is motivated by 'purposeful discrimination." (cleaned up)). But the Amended Complaint doesn't rely on a "disparate impact" theory. Instead, it provides that the Defendants "are unequally administering a facially neutral [policy]." *E&T Realty*, 830 F.2d at 1112 n.5. In any case, to the extent the Defendants are arguing that Assi must still allege "well-pled facts indicating discriminatory intent[,]" Reply at 15, we agree, *see E&T Realty*, 830 F.2d at 1113 ("[T]he fact that defendants treated [the plaintiffs] differently would not establish an equal protection violation absent proof that defendants acted with discriminatory intent.").

to enhanced scrutiny and to placement on watch lists.").

These allegations are insufficient to state an equal-protection claim. "Unequal administration of facially neutral legislation can result from either misapplication (i.e., departure from or distortion of the law) or selective enforcement (i.e., correct enforcement in only a fraction of cases)." *E&T Realty*, 830 F.2d at 1113. "[A] plaintiff bringing a 'selective enforcement' claim must allege that through state action, similarly situated persons have been treated disparately, and put forth evidence that the defendant's actions were motivated by [discriminatory intent]. By contrast, a 'misapplication' equal protection claim only requires the plaintiff to show (1) a discriminatory motive; and (2) a discriminatory effect." *Rivera v. Marin*, 2024 WL 4678913, at *3 (S.D. Fla. Nov. 5, 2024) (Altman, J.) (cleaned up).

Ours is a quintessential "selective enforcement" case. Assi is, after all, accusing the Defendants of "selectively apply[ing] and enforc[ing] watch list[s] and screening policies" against individuals "who are known or suspected to be Muslim or Middle Eastern[,]" Amended Complaint ¶ 204—so he "must show disparate treatment compared to a similarly situated party," *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1045 (11th Cir. 2008). But Assi's allegation that he's similarly situated to other "American-born business partners, as well as other American international travelers, [who] are not subjected to enhanced scrutiny nor to placement on watch lists" is conclusory. Amended Complaint ¶ 215. A threadbare proclamation that Assi is "similarly situated" to other comparators is simply not enough to state an equal-protection claim. *See Leib*, 558 F.3d at 1307 ("Given the complaint's complete lack of factual detail regarding the 'similarly situated' requirement, Leib's [equal-protection] claim was properly dismissed."); *Smith v. Reg'l Dir. of Fla. Dep't of Corr.*, 368 F. App'x 9, 13 (11th Cir. 2010) ("Smith's apparent claim that the lunch table, denial of breakfast, mailroom, and gate incidents were racial harassment also fails because Smith has offered nothing more than conclusory

allegations that officials treated Smith differently than other similarly-situated prisoners because of his race."); *see also Salloum*, 2020 WL 7480549, at *19 ("Salloum claims that he 'knows many other businessmen and international businessmen, none of who[m] are subjected to such harassment by federal agents working in United States airports, unless they are Muslim-American or Lebanese-American.' But allegations about an unknown number of unidentified 'businessmen and international businessmen' are insufficient to warrant an inference that the TSDB was established and/or is operated with a discriminatory intent.").[13]

Assi hasn't pled plausible, non-conclusory facts showing that the Defendants unequally applied the law because of a discriminatory intent or purpose. We therefore **DISMISS** Count VII.

*       *       *

---

[13] And we don't think there's any fair way to read Assi's Amended Complaint as asserting an equal-protection claim under a "misapplication" theory. Assi's allegations are that the Defendants zealously and selectively enforce the law against Muslims and people of Middle Eastern origin—not that the Defendants "refuse[ ] to correctly apply [the law] because of anti-[Muslim] animus." *Red Door Asian Bistro v. City of Fort Lauderdale*, 2023 WL 5606088, at *8 (11th Cir. Aug. 30, 2023). Even so, we find that Assi can't state a claim under a "misapplication" theory because he hasn't alleged sufficient facts to establish the Defendants' discriminatory intent. His only allegation supporting discriminatory intent is "the types of questioning [he] has consistently and repeatedly undergone in all of his travels since [November 2020]." Response at 31; *see, e.g.*, Amended Complaint ¶ 209 ("[T]he questions are always the same and are focused on his Lebanese origin, his ties to his family in Lebanon, his religious affiliation, his associations with other persons with Arabic or Muslim origin, and his frequent travel to Lebanon."). We find, as most other courts have, that similarly attenuated allegations aren't sufficient to establish discriminatory intent. *See, e.g.*, *Elhady v. Piehota*, 303 F. Supp. 3d 453, 467 (E.D. Va. 2017) (rejecting argument that "the disproportionate number of Muslims that are included in the Watch List" is evidence of "intentional discrimination"); *Kovac v. Wray*, 363 F. Supp. 3d 721, 760–61 (N.D. Tex. 2019) (same); *Salloum*, 2020 WL 7480549, at *20 (holding that being asked "personal, and unique questions regarding his friends and family, his personal dispositions, his relations, his friends and family's relations and dispositions," which "related tangentially to [the plaintiff's] Muslim faith," wasn't enough to "allege a viable Equal Protection claim"); *but see El Ali*, 473 F. Supp. 3d at 517 (finding that questions about "travel to Muslim-majority countries, religious pilgrimages, learning Arabic, attending mosques, affiliations with Muslim organizations, religious donations, and associations with other Muslims"—all questions that were asked *before* the plaintiffs were placed on the TSDB—provided a "factual basis to infer plausibly that placement on the list was tied directly, and perhaps solely, to Plaintiffs' race, alienage, religion, and national origin").

A dismissal under Rule 12(b)(6) is typically "on the merits and with prejudice." *White v. Lemma*, 947 F.3d 1373, 1377 (11th Cir. 2020). "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc); *see also Anderson v. Ahluwalia*, 2022 WL 3156409, at *4 (11th Cir. Aug. 8, 2022) ("If the district court had properly dismissed all of Plaintiffs' Count I negligence claims for failure to state a claim, then, under our rule in *Daewoo*, it would not have been required to sua sponte give Plaintiffs a chance to amend before dismissing with prejudice.").

Assi previously requested leave to file his Amended Complaint in response to the Defendants' original motion to dismiss. *See* Motion for Extension to File Motion for Leave to Amend [ECF No. 46] at 2 ("Upon review of Defendants' Motion to Dismiss, and without agreeing to the Defendants' arguments and allegations in the same motion, Plaintiff has determined that an amendment to the Complaint may resolve the matters raised in the Motion to Dismiss."). But when he was confronted with this MTD, Assi chose to stand by his Amended Complaint instead of requesting another opportunity to amend. *See generally* Docket.[14] We therefore need not give Assi another opportunity to amend. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample

---

[14] Of course, if Assi wanted to file a second amended complaint, he would've had to satisfy Rule 16(b)(4)'s "good cause" standard because the deadline to "file all motions to amend pleadings or to join parties" passed on April 4, 2024. Scheduling Order [ECF No. 32] at 2; *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("However, because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).").

opportunity to do so.").

## CONCLUSION

Accordingly, we hereby **ORDER and ADJUDGE** that the Defendants' Motion to Dismiss [ECF No. 51] is **GRANTED in PART** and **DENIED in PART** as follows:

1. Count II of the Amended Complaint is **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

2. Count III of the Amended Complaint is **DISMISSED without prejudice** for lack of subject-matter jurisdiction and, in the alternative, for failure to state a claim upon which relief may be granted.

3. Counts IV–VII are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

4. Defendants Department of Homeland Security, the Secretary of Homeland Security, the Attorney General, and the Director of the National Counterterrorism Center are **DISMISSED** from the case. The Clerk is directed to **TERMINATE** these Defendants from the docket.

5. The Defendants shall answer Count I of the Amended Complaint within **fourteen days** of this Order.

6. The parties are directed to prepare and file an amended joint scheduling report, as required by S.D. Fla. L.R. 16.1(b)(2), within **fourteen days** of this Order.

7. The Clerk is directed to **REOPEN** this case and **LIFT** the stay.

**DONE AND ORDERED** in the Southern District of Florida on July 8, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record